Bonnie MacNaughton (CA State Bar No. 107402)
Grant Damon-Feng (CA State Bar No. 319451)
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Telephone:    (206) 622-3150
Facsimile:     (206) 757-7700
Email:          bonniemacnaughton@dwt.com
                    grantdamonfeng@dwt.com

John D. Freed (CA State Bar No. 261518)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, CA 94111-6533
Telephone:    (415) 276-6500
Facsimile:     (415) 276-6599
Email:          jakefreed@dwt.com

Attorneys for Plaintiff
AMAZON.COM, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMAZON.COM, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>SLEJA, INC., a California corporation; ALEXA WEB SERVICES INC., a California corporation; EXPERT TECH ROGERS PVT. LTD., a foreign company; CHETAN PARKASH, an individual; BHARAT AGGARWAL, an individual; HEENA AGGARWAL, an individual; NEELAM RANI, an individual; RAJINDER SINGH, an individual; and SWATANTER GUPTA, an individual.<br><br>Defendants. | Case No.<br><br>**COMPLAINT** |

## I.   INTRODUCTION

1.       Amazon.com, Inc. is one of the most well-known and trusted companies in the

world.  Defendants are California based companies, Sleja, Inc. and Alexa Web Services Inc.;

Indian company Expert Tech Rogers Pvt. Ltd.; and the companies' principals and officers,

Chetan Parkash, Bharat Aggarwal, Heena Aggarwal, Neelam Rani, Rajinder Singh, and

Swatanter Gupta.  Together, Defendants are exploiting Amazon's brand to perpetrate a widespread tech support fraud that targets users of Amazon's popular Alexa devices, including Echo and Echo Dot smart speakers.  Defendants' services have no affiliation with Amazon.

2.      Defendants' scheme starts with websites and social media profiles that claim to help Amazon's customers set up their Alexa devices.  Defendants use Amazon's trademarks, as well as false and misleading statements about Amazon and Defendants' services, to divert victims from Amazon's genuine activation process and customer support.

3.      Among other fraudulent techniques, Defendants offer a fake download of Amazon's Alexa app.  When victims try to "download" the Alexa app, Defendants present them with a series of screens that fake the download process and prompt victims to share their email and phone number with the Defendants.  This process ends with an error message that prompts the victim to call Defendants for assistance or wait for a phone call on the number previously provided to Defendants.  An example of this fake error message is below:



4.      When a victim calls Defendants (or vice versa), the Defendants take remote control of the victim's computer and, through a variety of deceptive means, attempt to convince the victim that technical issues exist that prevent their Alexa device from working properly.

COMPLAINT
Case No.

Those claims are entirely false, and no such issues exist.  Defendants then offer services to fix these phony issues, charging customers large amounts of money for false services and assistance to take the simple steps required to activate an Alexa device, all of which Amazon fully supports—at no cost—through its own customer care.

5.      Amazon works vigorously to earn and keep its customers' trust, including protecting customers from bad actors like Defendants.  Amazon brings this lawsuit to stop Defendants' unlawful scheme, and to hold them accountable for the harm they have caused.

## II.   PARTIES

6.      Plaintiff Amazon is a Delaware corporation with its principal place of business in Seattle, Washington.  Through its subsidiaries, Amazon owns and operates the Amazon.com website and equivalent international websites.  Amazon also creates and sells a variety of physical devices, including smart speakers with Amazon's virtual assistant, Alexa.

7.      Defendant Sleja, Inc. ("Sleja") is a California corporation with its principal office located in Dublin, California.  Sleja's listed office is the current residence of Defendants Bharat and Heena Aggarwal, 11203 Rolling Hills Drive, Dublin, CA 94568.  Sleja is directly liable to Amazon for the damages alleged in this Complaint because of its direct participation in the alleged activities.

8.      Defendant Alexa Web Services Inc. ("Alexa Web") is a California corporation with its principal office located in Fremont, California.  Alexa Web's listed office is the former residence of Defendants Bharat and Heena Aggarwal, 37309 Sequoia Rd., Fremont, CA 94536.  Alexa Web is directly liable to Amazon for the damages alleged in this Complaint because of its direct participation in the alleged activities.

9.      Defendant Expert Tech Rogers Pvt. Ltd. ("Expert Tech Rogers") is an Indian company with its principal place of business in India.  Expert Tech Rogers is directly liable to Amazon for the damages alleged in this Complaint because of its participation in the alleged activities.

10.     Defendant Chetan Parkash ("Parkash") is an individual who, on information and belief, resides in San Jose, California.  Parkash is the Secretary, Chief Financial Officer, and

COMPLAINT
Case No.

agent for service of process of Defendant Sleja.  On information and belief, Parkash is directly liable to Amazon for the damages alleged in this Complaint based on Parkash's personal participation in the alleged activities.  Alternatively, Parkash has the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derives a direct financial benefit from that wrongful conduct.  As such, Parkash is subject to liability for the wrongful conduct alleged herein under principles of secondary liability

11.     Defendant Bharat Aggarwal ("B. Aggarwal") is an individual, who, on information and belief, resides in Dublin, California.  B. Aggarwal is the former Chief Executive Officer, Chief Financial Officer, and agent for service of process of Defendant Sleja and the current Secretary and CFO of Defendant Alexa Web.  On information and belief, B. Aggarwal is married to Defendant Heena Aggarwal.  On information and belief, B. Aggarwal is directly liable to Amazon for the damages alleged in this Complaint based on B. Aggarwal's personal participation in the alleged activities.  Alternatively, B. Aggarwal has the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derives a direct financial benefit from that wrongful conduct.  As such, B. Aggarwal is subject to liability for the wrongful conduct alleged herein under principles of secondary liability.

12.     Defendant Heena Aggarwal ("H. Aggarwal") is an individual, who, on information and belief, resides in Dublin, California.  H. Aggarwal is the CEO, agent for service of process, owner, and former CFO of Defendant Alexa Web.  On information and belief, she is married to B. Aggarwal.  On information and belief, H. Aggarwal is directly liable to Amazon for the damages alleged in this Complaint based on H. Aggarwal's personal participation in the alleged activities.  Alternatively, H. Aggarwal has the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derives a direct financial benefit from that wrongful conduct.  As such, H. Aggarwal is subject to liability for the wrongful conduct alleged herein under principles of secondary liability.

13.     Defendant Neelam Rani ("Rani") is an individual, who, on information and belief, resides in Pleasanton, California.  Rani is a director of Defendant Sleja.  On information and belief, Rani is directly liable to Amazon for the damages alleged in this Complaint based on

COMPLAINT
Case No.

Rani's personal participation in the alleged activities.  Alternatively, Rani has the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derives a direct financial benefit from that wrongful conduct.  As such, Rani is subject to liability for the wrongful conduct alleged herein under principles of secondary liability.

14.     Defendant Rajinder Singh ("Singh") is an individual who, on information and belief, resides in India.  Singh is the Chief Executive Officer of Defendant Sleja.  On information and belief, Singh is directly liable to Amazon for the damages alleged in this Complaint based on Singh's personal participation in the alleged activities.  Alternatively, Singh has the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derives a direct financial benefit from that wrongful conduct.  As such, Singh is subject to liability for the wrongful conduct alleged herein under principles of secondary liability

15.     Defendant Swantanter Gupta ("Gupta") is an individual, who, on information and belief, resides in India.  Defendant Gupta is a director of Expert Tech Rogers.  On information and belief, Gupta is directly liable to Amazon for the damages alleged in this Complaint based on Gupta's personal participation in the alleged activities.  Alternatively, Gupta has the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derives a direct financial benefit from that wrongful conduct.  As such, Gupta is subject to liability for the wrongful conduct alleged herein under principles of secondary liability.

### III.     JURISDICTION

16.     The Court has subject matter jurisdiction over Amazon's claims for trademark infringement (15 U.S.C. § 1114), violations of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), trademark dilution (15 U.S.C. § 1125(c)), and cybersquatting (15 U.S.C. § 1125(d)) pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

17.     The Court has personal jurisdiction over Defendants Sleja, Alexa Web, B. Aggarwal, H. Aggarwal, Parkash, and Rani because they reside in this District.  The Court has personal jurisdiction over the other Defendants because they reached out to and did business with residents of this District (Sleja, Alexa Web, B. Aggarwal, H. Aggarwal, Parkash, and Rani.) Further, all Defendants transacted business and committed tortious acts within and directed to

COMPLAINT
Case No.

this District, and Amazon's claims arise from those activities.  On information and belief, Defendants' scheme targeted people in this District, and Defendants' websites actively solicit interaction from victims in this District.

## IV.     VENUE

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in the District, or 28 U.S.C. § 1391(c) because at least one Defendant resides in this District.

## V.     INTRADISTRICT ASSIGNMENT

19.     This case is properly assigned on a District-wide basis pursuant to Civil L.R. 3-2(c) because it arises out of Defendants' infringement of Amazon's intellectual property rights.

## VI.     FACTS

**A.     Amazon, Alexa, and Echo Devices**

20.     Amazon is a highly trusted brand.  One of Amazon's most popular products is its digital assistant called Alexa, which allows users to use a wide array of services using only their voice, including playing music, making phone calls, and delivering the news.

21.     Alexa is built into numerous devices offered by Amazon and by numerous third parties.  Many of these products are smart home devices, such as lights, thermostats, door locks, and appliances.  Among other things, Alexa allows users to control these smart home devices either through voice control or through other Alexa-enabled devices.

22.     Echo, and its smaller sibling, Echo Dot, are popular smart speakers made by Amazon that come with Alexa.  The speakers allow users to interact with Alexa and control other Alexa-compatible devices.

23.     Echo and Echo Dot come with instructions on how to activate the product and begin using its features.  Generally, users must download the Amazon Alexa app, which is available for iOS and Android devices.  The Amazon Alexa app is developed by Amazon and is available to download for free.  Once downloaded, the Amazon Alexa app guides users through the setup process.  There is no fee to activate an Echo or Echo Dot, and no paid subscription is required.

COMPLAINT
Case No.

24.     Amazon offers robust customer support for Echo and Echo Dot users—free of charge.  Amazon's website contains instructions, troubleshooting pages, video tutorials, and answers to common questions.  Should a user require additional support, they may contact an Amazon customer service representative by phone or through online chat (among other methods).

25.     Amazon exclusively owns numerous U.S. trademark registrations and pending applications.  These trademarks are a critical component of consumers' ability to readily identify Amazon products and services—including genuine Alexa-compatible devices and services.

26.     As alleged in this Complaint, the following trademarks and service marks (collectively "Amazon Trademarks") were unlawfully used to further Defendants' scheme:

| **Mark** | **Registration No. (International Classes)** |
|---|---|
| AMAZON | 2,657,226 (Int. Cl. 42)<br>2,738,837 (Int. Cl. 38)<br>2,738,838 (Int. Cl. 39)<br>2,832,943 (Int. Cl. 35)<br>2,857,590 (Int. Cl. 9)<br>3,868,195 (Int. Cl. 45)<br>4,171,964 (Int. Cl. 9)<br>4,533,716 (Int. Cl. 2)<br>4,656,529 (Int. Cl. 18)<br>4,907,371 (Int. Cls. 35, 41, 42)<br>5,102,687 (Int. Cl. 18)<br>5,281,455 (Int. Cl. 36) |
| AMAZON.COM | 2,078,496 (Int. Cl. 42)<br>2,167,345 (Int. Cl. 35)<br>2,559,936 (Int. Cl. 35, 36, 42)<br>2,633,281 (Int. Cl. 38)<br>2,837,138 (Int. Cl. 35)<br>2,903,561 (Int. Cls. 18, 28)<br>3,411,872 (Int. Cl. 36)<br>4,608,470 (Int. Cl. 45) |
| **amazon** | 4,171,965 (Int. Cl. 9)<br>5,038,752 (Int. Cl. 25) |

COMPLAINT
Case No.

| | |
|---|---|
| **amazon**.com | 2,684,128 (Int. Cl. 38)<br>2,696,140 (Int. Cl. 42)<br>2,789,101 (Int. Cl. 35)<br>2,884,547 (Int. Cl. 39)<br>2,970,898 (Int. Cl. 41)<br>3,414,814 (Int. Cl. 36) |
| AMAZON ECHO | 4,760,324 (Int. Cl.35) |
| ALEXA | 5,563,417 (Int. Cls. 9, 35, 36, 39, 41, 42, 43, 44, 45)<br>5,880,382 (Int. Cls. 9, 37, 41, 42)<br>2,181,470 (Int. Cl. 42)<br>2,189,928 (Int. Cl. 9) |
| ECHO | 5,470,187 (Int. Cls. 9, 42)<br>5,469,992 (Int. Cls. 9, 38, 41, 42) |
|  | 5,413,055 (Int. Cls. 35, 36, 39, 41, 43, 44, 45)<br>5,682,947 (Int. Cls. 9, 42) |

27.     The Amazon Trademarks have been used exclusively and continuously by Amazon, and have never been abandoned.  The above U.S. registrations for the Amazon Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065.  The registrations for the Amazon Trademarks constitute prima facie evidence of their validity and of Amazon's exclusive right to use the Amazon Trademarks pursuant to 15 U.S.C. § 1057(b).

**B.     Tech Support Scams**

28.     Tech support scams victimize hundreds of thousands of people every year.[1] These schemes disproportionately affect vulnerable populations, such as the elderly.

29.     Bad actors target victims through a variety of means, including online advertisements that render pop-ups, paid search results, websites, and mobile applications.  The

---

[1] https://www.consumer.ftc.gov/blog/2019/03/ftcs-tech-support-takedown-2019.

COMPLAINT
Case No.

purpose of each is to prompt victims to call a toll-free number that connects them to the bad actors.

30.     Once connected, the bad actors typically gain remote access to victims' computers.  With the remote access, the bad actors deceive victims into believing their devices have dangerous technical issues, such as being infected with malicious viruses, in order to sell unneeded services to solve the nonexistent issues.

31.     Traditionally, tech support schemes have focused on vulnerabilities in a computer's operating system or other software as the material misrepresentations made to victims in order to sell fraudulent services.

32.     Given the rise of connected devices beyond traditional computers—such as Alexa devices—bad actors now target potential victims seeking assistance with these devices.  Among other things, the bad actors seek to divert victims from contacting the genuine customer support numbers and instead cause unsuspecting victims to pay the bad actors for unnecessary services to perform basic tasks like connecting the devices.  During this process, the bad actors make a variety of false statements about the device, its security, and the genuine company.

**C.      Defendants Deceive People Into Purchasing Unnecessary Tech Support Services for Amazon Alexa Devices**

33.     Defendants run an international tech support fraud scheme with operations in the U.S. and India.  Defendants recruit victims through multiple websites and social media profiles that purport to offer genuine services to help users connect Amazon Alexa devices.  Defendants use these websites and social media sites to divert victims from Amazon's genuine website and Alexa app, and then to deceive victims into believing an issue exists with their Alexa device— when no such issue exists.  Defendants then prey on these victims to sell them "services" for tens or hundreds of dollars in order to "fix" the issue.  Defendants' services are unnecessary and harm innocent victims.

1.   **Defendants**

a.   **Sleja, Inc.**

34.     Defendant Sleja, Inc. is a California corporation that was registered on March 24, 2016.  The Certificate of Incorporation for Sleja lists the company's initial address for service of process as 37309 Sequoia Rd., Fremont, CA 94536 (the former address of B. and H. Aggarwal) and identifies B. Aggarwal as the CEO, CFO, and agent for service of process; Defendant Parkash as the Secretary; and Defendant Rani as a director.

35.     Sleja's most recent Statement of Information, filed with the California Secretary of State on May 17, 2019, lists the company's address for service of process as 11203 Rolling Hills Drive, Dublin, CA 94568 (the current address of B. and H. Aggarwal) and identifies Defendant Singh as the CEO; Defendant Parkash as the Secretary, CFO, and agent for service of process; and Defendant Rani as a director.

36.     Sleja is affiliated with the website www.slejasoft.com, which offers wireless internet routers and range extenders for sale, features a banner that reads "Sleja Soft – A Sleja Inc. Company," and lists 37309 Sequoia Rd., Fremont, CA, 94536 – the same address listed in Sleja's Certificate of Incorporation – as a contact address.

37.     SlejaSoft.com was registered on April 19, 2017 via PublicDomainRegistry by Defendant Swatanter Gupta, and the website's technical contact is listed as Swatanter Gupta, 69, CHB Flats, Sector 51 A R803 Maya Garden Phase 2 VIP Road Zirakpur, Chandigarh, Chandigarh, 160047, IN.  The email address associated with the technical contact is alexawebinc@gmail.com.

38.     As described in Section VI(C)(4) of this Complaint, Defendant Sleja billed an investigator working on behalf of plaintiff's attorneys, Davis Wright Tremaine ("DWT") for tech support "services" solicited through Defendants' fraudulent scheme on two occasions.

b.   **Alexa Web Services, Inc.**

39.     Defendant Alexa Web Services Inc. is a California corporation that was registered on February 16, 2018.  A Statement of Information filed with the California Secretary of State in March 2018 for Alexa Web identified Defendant Heena Aggarwal as the CEO, CFO, owner, and

COMPLAINT
Case No.

agent for service of process; Defendant Bharat Aggarwal as the Secretary and a director; and 37309 Sequoia Rd., Fremont, CA 94536 (the former address of B. and H. Aggarwal and Defendant Sleja) as the address for service of process.  A Statement of Information filed on January 2, 2019 certified that there had been no change in information since the previous Statement of Information but was signed by B. Aggarwal as CFO.

40.     As described in Section VI(C)(4) of this Complaint, Defendant Alexa Web billed an investigator working on behalf of DWT for tech support "services" solicited through Defendants' fraudulent scheme.

### c.      Expert TechRogers Pvt. Ltd.

41.     Defendant Expert Tech Rogers is an Indian company based in India that was incorporated in June 2015 with corporate identification number U72900PB2015PTC039515, registration number 039515, and contact address House No.16B, 2nd Floor, Sunrise Complex, Vip Road, Lohgarh, Zirakpur, Mohali, Punjab, India 140603.  Defendant Gupta, the same individual who registered the website www.slejasoft.com, is a director of Expert Tech Rogers.

42.     On information and belief, Expert Tech Rogers is associated with the website http://www.techroger.com, which, as of June 27, 2020, advertised "TechRoger Business Solutions."[2]

43.     As described in Section VI(C)(2)(a) of this Complaint, Defendant Expert Tech Rogers and Defendant Gupta, a director of Expert Tech Rogers, are the registrants for at least two of the websites used by Defendants to infringe the Amazon Trademarks and defraud victims.

44.     The individual Defendants share social media connections.  For example, Gupta is Facebook friends with B. Aggarwal.

### 2.      Defendants Target Victims Seeking Help with Amazon Alexa Devices

45.     The Defendants have used at least eight websites and three social media profiles to conduct their fraudulent scheme.  All of the websites feature similar URLs, website language, and graphics, and falsely claim to offer similar Alexa device setup and support services (the "Websites").  Further, the Websites are all connected; they share overlapping IP addresses and

---

[2] Sometime after June 27, 2020, the website appears to have been taken down.

COMPLAINT
Case No.

registrants, list overlapping phone numbers, and provide payment receipts from the same entities. The Defendant social media pages contain links to the Websites and list the same phone numbers identified on the Websites.  A chart showing the connections between the websites is below:

| Website | Telephone Numbers[3] | IP Address | Hosting Service | Registration Date | Registrant | Registrar | Test Purchase Billing Entity |
|---|---|---|---|---|---|---|---|
| Website 2 downloadappalexaecho.com/ | (888) 381-1555 | 104.27.166.110 | Cloudflare, Inc. | September 22, 2018 | Ravi Kalara, Wise Move | PublicDomainRegistry.com | Sleja, Inc. |
| Website 7 dotcausa.com/ | | 116.202.192.24 | Hetzner Online Ag | June 24, 2020 | Unknown (private registration) | PublicDomainRegistry.com | |
| Website 4 downloadalexaappecho.com | (888) 750-8779 | | | May 31, 2019 | Ravish Verma, Expert Roger | PublicDomainRegistry.com | |
| Website 3 smartspeakerappsetup.com | | | | November 4, 2019 | Unknown (private registration) | PublicDomainRegistry.com | Alexa Web |
| Website 5 downloadappsetup.com/ | (877) 550-9199 | | | July 5, 2019 | Ravish Verma, Expert Roger | PublicDomainRegistry.com | N/A |
| Website 1 downloadalexaapphosetup.com/ | (844) 239-8999 | 104.31.72.143 | Cloudflare, Inc. | February 13, 2018 | Ravi Kalara, Wise Move | PublicDomainRegistry.com | Sleja, Inc. |
| Website 8 downloadalexaappsetup.com/ | | 104.18.60.130 | | May 31, 2019 | Ravish Verma Expert Roger | PublicDomainRegistry.com | |
| Website 6 downloadappsetupwifi.com/ | (877) 550-9199 | 104.31.66.66 | | July 5, 2019 | Ravish Verma, Download App Expert | PublicDomainRegistry.com | N/A |

46.    The purpose of the Websites is to cause victims to contact Defendants' call center for assistance with their Alexa devices, which allows Defendants to sell victims unnecessary services.

47.    Among other tactics, Defendants use Amazon Trademarks and false statements about their affiliation with Amazon on the Websites.  The Websites and Social Media Pages

---

[3] Facebook Site 1 lists the number (888) 750-8779 and contains links to Website 3 and Website 4. Facebook Site 2 lists the number (844) 239-8999 and contains links to Website 5 and Website 6.

COMPLAINT
Case No.

prominently display Amazon Trademarks without authorization, and several use Amazon Trademarks in the domain names themselves, including www.downloadalexaappechosetup.com, www.downloadappalexaecho.com, and www.downloadalexaappecho.com.

48.     Defendants also use a phony download process to trick people into believing that an issue prevents them from downloading the Alexa app—when no such issue exists.

**a.      Defendants Use the Websites to Target Victims**

**(1)      downloadalexaappechosetup.com ("Website 1")**

49.     Website 1 claimed to provide "Guides for Alexa App & Amazon Alexa Setup," featured a button that falsely stated it can "Download Alexa App," and listed the toll-free telephone number (844) 239-8999.  A screenshot of Website 1 is below:



50.     Website 1 was registered in India on February 13, 2018 via PublicDomainRegistry.com to Ravi Kalara of an organization called "Wise Move."  Website 1 is hosted through IP address 104.31.72.143, which is controlled by Cloudflare, Inc.   The technical contact for Website 1 was listed as Ravi Kalara, Wise Move, #802 Savatri Green Tower, Zirakpur, Punjab, 140603, IN.  Defendant Gupta is Facebook friends with a "Ravi Kalra" and is tagged in Facebook photos with Kalra.

51.     The email address of the technical contact was satyawan1042@gmail.com.

COMPLAINT
Case No.

1

**(2)      downloadappalexaecho.com ("Website 2")**

2      52.      Website 2 claimed to provide the "Best Way to Get Amazon Alexa App for Alexa

3   Setup," featured a button that falsely stated it could "Download Alexa App," and listed the toll-

4   free telephone number (888) 381-1555.  A screenshot of Website 2 is below:

5

6

7



8

9

10

11

12

13

14

15

16      53.      Website 2 was registered in India on September 22, 2018 via

17   PublicDomainRegistry.com to Kalara of Wise Move.  Website 2's is hosted through IP address

18   104.27.166.110 which is controlled by Cloudflare, Inc.  The technical contact for Website 2 was

19   listed as Ravi Kalara, Wise Move, #802 Savatri Green Tower, Zirakpur, Punjab, 140603, IN.

20   The email address of the technical contact was satyawan1042@gmail.com (the same email

21   address listed as the technical contact for Website 1).

22

**(3)      smartspeakerappsetup.com ("Website 3")**

23      54.      Website 3 claims that if victims "click on the download button" labeled

24   "Download Alexa App," they will "get the app" and lists the toll-free telephone number (888)

25   750-8779.  A screenshot of Website 3 is below:

26          *[screenshot on following page]*

27

28

COMPLAINT
Case No.



55.     Website 3 was registered on November 4, 2019 via PublicDomainRegistry.com to an unknown registrant.  Website 3 is hosted through IP address 116.202.192.24, which is the same as Websites 4 and 5, and is controlled by Hetzner Online GmbH.  Privacy Protect LLC, a website that protects the contact information of domain owners and registrants, is listed as Website 3's technical contact.

**(4)     downloadalexaappecho.com ("Website 4")**

56.     Website 4 has a button located directly under the text "Alexa.Amazon.Com" that says "Download App," indicating that if users click the button, it will download the Alexa app, and lists the toll-free telephone number (888) 381-1555 (the same phone number listed on Website 2).  A screenshot of Website 4 is below:



COMPLAINT
Case No.

57.     Website 4 was registered on May 31, 2019 via PublicDomainRegistry.com to Ravish Verma of "Expert Roger," which, upon information and belief, is Defendant Expert Tech Rogers.  Website 4 is hosted through the same IP address as Websites 3 and 5, 116.202.192.24, and is controlled by Hetzner Online GmbH.  Website 4's technical contact is listed as Ravish Verma of Expert Roger, SEO 167, Sec 70, Mohali Near Vivek High School, Mohali, Punjab, 160071 IN.  The email address of the technical contact is ak8177665@gmail.com.

**(5)     downloadappsetup.com ("Website 5")**

58.     Website 5 has a button located directly under the text "Alexa.Amazon.Com" that says "Download," indicating that if users click the button, it will download the Alexa app, and lists the toll-free telephone number (877) 550-9199.  A screenshot of Website 5 is below:



59.     Website 5 was registered on July 5, 2019 via PublicDomainRegistry.com to Verma of "Download App Expert."  Website 5 is hosted through the same IP address as Websites 3 and 4, 116.202.192.24, and is controlled by Hetzner Online GmbH.  Website 5's technical contact is listed as Ravish Verma of Download App Expert, SEO 167, Sec 70, Mohali Near Vivek High School, Mohali, Punjab, 160071 IN.  The email address of the technical contact is love2787@gmail.com.

COMPLAINT
Case No.

**(6)   downloadappsetupwifi.com ("Website 6")**

60.     Website 6 has a button located directly under the text "Alexa Amazon App" that says "Download," indicating that if users click the button, it will download the Alexa app, and lists the toll-free telephone number (877) 550-9199 (the same phone number listed on Website 5).  A screenshot of Website 6 is below:



61.     Website 6 was registered on July 5, 2019 via PublicDomainRegistry.com to Verma of "Download App Expert."  Website 6 is hosted through IP address 104.31.66.66, which is controlled by Cloudflare, Inc.  The technical contact is listed as Ravish Verma of Download App Expert, SEO 167, Sec 70, Mohali Near Vivek High School, Mohali, Punjab, 160071 IN. The email address of the technical contact is love2787@gmail.com.

**(7)   dotcausa.com ("Website 7")**

62.     Website 7 has a button located directly under the text "Alexa.Amazon.com" that says "Download," indicating that if users click the button, it will download the Alexa app, and lists the toll-free telephone number (888) 381-1555 (the same phone number listed on Websites 2 and 4).  A screenshot of Website 7 is below:

*[screenshot on following page]*

17

COMPLAINT
Case No.



63.     Website 7 was registered on June 24, 2020 via PublicDomainRegistry.com to a private registrant.  Website 7 is hosted through IP address 116.202.192.24, which is controlled by Hetzner Online GmbH.  Privacy Protect LLC, a website that protects the contact information of domain owners and registrants, is listed as Website 3's technical contact.

**(8)     downloadalexaappsetup.com/ ("Website 8")**

64.     Website 8 has a button located directly under the text "Alexa.Amazon.Com" that says "Download App," indicating that if users click the button, it will download the Alexa app, and lists the toll-free telephone number (844) 239-8999 (the same number listed on Website 1).  A screenshot of Website 8 is below:

*[screenshot on following page]*

COMPLAINT
Case No.



65.     Website 8 was registered on May 31, 2019 via PublicDomainRegistry.com to Ravish Verma of "Expert Roger."  Website 8 is hosted through IP address 104.18.60.130, which is controlled by Cloudflare, Inc.  The technical contact is listed as Ravish Verma of Expert Roger, SEO 167, Sec 70, Mohali Near Vivek High School, Mohali, Punjab, 160071 IN.  The email address of the technical contact is ak8177665@gmail.com.

**b.      Defendants Use the Social Media Pages to Target Victims**

66.     The Defendants also operate social media pages (the "Social Media Pages") that advertise the same Alexa setup services and refer victims to the Websites and/or the phone numbers listed on the Websites.

**(1)      facebook.com/downloadalexaapp/ ("Facebook Site 1")**

67.     Facebook Site 1 provides a link to Website 3, www.smartspeakerappsetup.com. It lists the number (888) 750-8779 (the same number listed on Website 3) and the contact email dappalexaecho@gmail.com.  Posts on Facebook Site 1 include links to Website 3, www.smartspeakerappsetup and Website 4, wwww.downloadalexappecho.com, with screenshots below as examples.

COMPLAINT
Case No.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28





(2)   **facebook.com/Alexaappdownload/ ("Facebook Site 2")**

68.   Facebook Site 2 includes a link to Website 5, downloadappsetup.com, the number

(844) 239-8999 (the same number listed on Websites 1 and 8) and the contact email

20

downloadalexappechosetup@gmail.com.  Posts on Facebook Site 2 include links to Website 5, downloadappsetup.com, and Website 6, downloadappsetupwifi.com.





COMPLAINT
Case No.

1

2

3

4

5

6

7

8

9

10

11

12

13



14

         **(3)**      **twitter.com/dappalexaecho ("Twitter Account 1")**

15

      69.      The profile for Twitter Account 1, @dappalexaecho, available at https://

16

/twitter.com/dappalexaecho, includes a link to Website 3, www.smartspeakerappsetup.com.

17

Twitter Account 1's tweets include links to both Website 3, Website 4, and Website 8.

18

    *[screenshots on following page]*

19

20

21

22

23

24

25

26

27

28

22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





COMPLAINT
Case No.



    **3.**    **Defendants' Websites Falsely Tell Victims an Error Occurred with their Alexa Device**

70.    The purpose of Defendants' Websites and Social Media Pages is to deceive victims into calling the Defendants' toll-free numbers.

71.    To accomplish this, the Websites falsely represent to victims that they are offering the genuine Amazon Alexa app, using Amazon's trademarks to further the deception, then falsely inform victims that an error prevented them from downloading the Alexa app.

72.    When users click on the "Download Alexa App," "Download App," or "Download" button on the Websites, they are prompted to provide information, including their full name, email address, and telephone number, as shown in the following screenshots from Website 5:

*[screenshots on following page]*

COMPLAINT
Case No.

1
2
3
4
5
6
7
8
9



10
11
12
13
14
15
16
17
18
19



20
21
22
23
24
25
26
27
28



COMPLAINT
Case No.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



COMPLAINT
Case No.



73.     After providing the requested information, victims are led to a page with a fake error message, indicating that their attempt to "download" the Alexa app failed.  This page includes instructions to call or receive a call from the Defendants.

74.     As example, the below screenshot from Website 5 notes a "problem with your request" and asks victims to contact a support number or wait for the support team to call them on the phone number they provided during the fake "download process."



COMPLAINT
Case No.

75.     As another example, Website 1 showed a 404 error message and a button that navigated "Back Home," suggesting that victims' attempt to "download" the Alexa app failed.  A phone number and chat feature were visible on the "404 error" page of Website 1, encouraging victims to contact the Defendants for assistance.  A screenshot of Website 1's "404 error" page is below:



76.     Defendants' misrepresentations on the Websites are particularly harmful because they are designed to appear like Amazon's genuine setup process for Alexa devices.  To set up a device using Amazon's genuine process, users download Amazon's Alexa app and follow the setup instructions.  Defendants target victims by diverting them from Amazon's genuine app to the Websites, from which victims cannot actually install Alexa devices.

### 4.      Defendants' Sale of Fraudulent Tech Support Services

77.     Once victims call one of the numbers listed on the Websites (e.g., after receiving a fake error message from one of the Websites), Defendants continue to falsely claim that there is an issue with the victims' Alexa device, and attempt to sell victims unnecessary services.

78.     Investigators working for Amazon contacted Defendants using four different phone numbers listed on the Websites and were sold unnecessary services after being falsely told issues existed with their Echo devices.  Despite Defendants' extensive use of the Amazon Trademarks and false or misleading statements about Defendants' connection to Amazon,

COMPLAINT
Case No.

Defendants' services do not originate with, are not sponsored or approved by, and are not otherwise affiliated with, Amazon.

### a.      First Test Purchase

79.     An investigator working on behalf of DWT called (844) 239-8999, the number listed on Websites 1 and 8 and Facebook Site 2.[4]  A man answered the phone and identified himself as "tech support."  The investigator asked the technician for help to set up his Amazon device.  The technician asked for the investigator's first and last name, then informed the investigator that he would be disconnecting the call and would call back within the next five minutes.  Five minutes later, the investigator received a call from (209) 789-3625 (which public records indicate is a voice-over-Internet Protocol ("VoIP") number controlled by the Canadian company TextNow, Inc.).

80.     The new caller told the investigator that he was calling from "support" to assist the investigator with setting up Alexa.  The technician instructed the investigator to download Supremo Control, an application that allows users to remotely access and control other computers.

81.     Once the investigator had installed Supremo Control, the technician established remote control over the investigator's computer, navigated the browser to alexa.amazon.com—a legitimate Amazon website—and instructed the investigator to enter his email address and a password so that the investigator could create an Amazon Alexa account.

82.     After the investigator verified the account via an email sent to the email address he used to create the account, the technician asked for the investigator's date of birth, falsely claiming he needed it "for security reasons."

83.     After the investigator provided a birthdate, the technician finished setting up the Echo via alexa.amaxon.com, and asked the investigator to plug the device in.  He then falsely told the investigator that a "network conflict" prevented the Echo from communicating with the network.

---

[4] As discussed above, Facebook Site 2 also advertises Websites 5 and 6.

COMPLAINT
Case No.

84.     The technician informed the investigator that to fix the "network conflict," he needed to "activate network security" to protect the network computer and his device.  He informed the investigator that there was a one-time service fee of $99.99 for network security "lifetime protection."

85.     The investigator asked the technician if Amazon's technical support was free. The technician responded that it was, but that there was "unwanted garbage" on the investigator's network and computer, and that the technician needed to install network security onto the network to fix the issues.  The investigator agreed to purchase the services and provided a credit card number to the technician.

86.     Three days later, the investigator's card was charged $99.99 by "Sleja Inc," and he received a confirmation email for the charge.  A screenshot of the Visa charge is below:



87.     A partial screenshot of the email receipt for the transaction, identifying the email address slejainc@gmail.com and the mailing address 37309 Sequoia Road, Fremont, CA 94536, which is associated with Defendants Sleja, B. Aggarwal, and H. Aggarwal, is below:

[*Screenshot on the following page*]

COMPLAINT
Case No.

```
From: SLEJAINC@GMAIL.COM <SLEJAINC@gmail.com>
Date: ██████████████
Subject: Order Confirmation
To: ████████████████

SLEJA INC
37309 SEQUOIA RD
FREMONT, CA 94536
408-613-7583

Order Results
Profile Name: SLEJA INC
Transaction ID: 2██████████████████████
Date/Time: 0██████████████████████
Transaction Type: SALE
Approval Message: APPROVAL
Approval Code: ████████████
ECI:

Order Section
Card Number : ***********6214
Amount : $99.99USD
Description : wise
```

88.     The technician's representations about a "network conflict" and "unwanted garbage" on the investigator's computer were false and made for the purpose of defrauding the investigator into purchasing unnecessary, nonexistent services.  No issues existed with the investigator's computer or network that prevented the investigator's Echo from connecting to his network, and the investigator did not need network security services.  Nor, upon information and belief, did Defendants actually provide any genuine services after billing the investigator $99.99.

### b.     Second Test Purchase

89.     An investigator working on behalf of DWT called (888) 381-1555, the number provided on Websites 2, 4 and 7.  The investigator told the man who answered that he needed help regarding his Echo, and the man responded that a technician would call the investigator back to assist him.

90.     Around five minutes later, the investigator received a call from (209) 782-4352 (which public records indicate is controlled by TextNow, Inc.).  The caller told the investigator his name was "Jean" and he was from "Amazon Echo Alexa Support."  The technician was not actually affiliated with Amazon.

91.     The technician asked the investigator questions about his setup, including if the Echo was being used for the first time and if the investigator was working from a laptop or a

COMPLAINT
Case No.

desktop computer.  The technician then offered to take remote control of the investigator's laptop and instructed the investigator to download and install Supremo Control.

92.     The technician remotely connected to the investigator's computer via Supremo Control, downloaded the web browser Google Chrome, and navigated to alexa.amazon.com.  He and the investigator then set up an Amazon Alexa account for the investigator.

93.     The technician asked the investigator to plug in the Echo and tell him what color the light on it was.  After the investigator told him it was orange—which means that the device is in "setup mode"—the technician told the investigator that he needed to "register" his "Alexa software account."  He told the investigator he had the option to choose a one, two, or five-year registration.  The investigator asked the technician twice what services Amazon provided with this registration, and both times the technician repeated that the investigator had to choose between one, two, and five-year registration options.

94.     The investigator told the technician he would like the one year option, and the technician falsely told the investigator that his Echo would not work without this subscription. He then told the investigator that it would cost $49 for a one-year subscription and asked him what type of card he wanted to use.

95.     The call then disconnected.  The investigator tried to call (209) 782-4352 and (888) 381-1555, but no one answered either line.  The investigator then called the number from the first test purchase, (209) 789-3625.  A man who identified himself as "Mark" answered the phone.  The investigator said that he had been speaking with a technician about getting a one-year Alexa registration.

96.     The new technician then took the investigator's payment information, took remote control over his computer, and finished setting up his Alexa account.  At the end of the call, the technician provided the callback number (855) 550-2155.  The technician then confirmed the investigator's card would be charged $49.99 and told him the charge would be to "SLEJAINC."

COMPLAINT
Case No.

97.     Around an hour later, the investigator called the original toll free number that he had called at the beginning of his test purchase, (888) 381-1555.  An unidentified man answered the phone.  The investigator told him he had been talking to another technician but his phone had gotten disconnected.  The man told the investigator that "Mark" had already completed his setup and that the Echo should be working.  One day later, the investigator's credit card was charged $49.99 by "Sleja, Inc."  A screenshot of the charge is below:



| Transaction Details | | | |
|---|---|---|---|
| Authorized amount: | $49.99 | Retailer city: | 4086137583 |
| Retailer name: | SLEJA INC | Settlement amount: | $49.99 |
| Purchase date: | ■ | Retailer zip code: | 945363772 |

98.     The technician's representations that the investigator's Echo would not work unless he paid to register his "Alexa software account" were false and made for the purpose of defrauding the investigator into purchasing unnecessary, nonexistent services.  Although Amazon requires users to register their Alexa-enabled devices, registration is free and does not expire, and Amazon does not charge money for access to Alexa.

### c.    Third Test Purchase

99.     An investigator working on behalf of DWT called (888) 750-8779, the number located on Website 3 and Facebook Page 1.[5]   A man answered the phone, identified himself as "support," and asked the investigator for his phone number.

100.    The investigator provided a phone number to the man on the other line.  The man informed him someone would return his call.  Several minutes later, the investigator received a call from (803) 369-3499 (which public records indicate is controlled by the U.S. company Bandwidth.com).  This number called him four times, but each time, the investigator could not hear anything from the other line.  After the fourth call, the investigator called (803) 369-3499

[5] As discussed above, Facebook Site 1 also advertises Website 4.

COMPLAINT
Case No.

back and connected with a technician who advised that he was going to help the investigator with his Alexa Echo Dot.

101.    The technician identified himself as "Ricky" and asked the investigator questions about his Alexa, including if the investigator had recently made changes to his account and the email address associated with the Alexa account.

102.    The technician told the investigator he needed to "look up" the email address associated with the Alexa account on his servers.  After waiting a few minutes, the technician told the investigator that his Alexa account was not working because it needed to be "updated." The investigator asked how he could do that, and the technician told him he had two options – he could purchase either a two-year update for $49.99 or a lifetime update for $149.99.  The investigator agreed to purchase the lifetime update, and the technician directed him to download and install Supremo Control.

103.    The technician worked with the investigator to gain remote control over his laptop and navigated to alexa.amazon.com.  The technician then helped the investigator reset the Echo and finish setting up his account.  After the technician got the Echo working, he told the investigator he was going to update his account, which would generate an invoice to his email. He asked the investigator if he had PayPal, but the investigator informed him he only had a Visa card.  While they were still on the phone and the technician still had remote control over his computer, the investigator received an email with an invoice from "Alexa Web" for $149.99, as shown in the below screenshot:

*[screenshot on the following page]*

COMPLAINT
Case No.

1
2
3
4
5
6
7
8
9
10
11
12



13    104.    The investigator navigated to the invoice page, as shown in the following

14 screenshot:

15
16
17
18
19
20
21
22
23
24
25



26    105.    After the investigator had successfully paid the invoice, the technician told him he

27 had "lifetime upgrades" and to call (888) 294-4850 (the phone number listed on Website 3) if he

28 ever had any problems.

COMPLAINT
Case No.

106. A few days later, the investigator dialed (888) 294-4850, claiming to have additional problems with his Echo. He received a call back from "Ricky" at the number (803) 369-3499. Ricky told the investigator that, if he ever had more problems, he should call (888) 221-1161 (which public records indicate is controlled by the U.S. company AT&T, Inc.).

107. The technician's statements that the investigator needed to "update" his Alexa account and that he could purchase two-year or lifetime updates were false and made for the purpose of defrauding the investigator into purchasing unnecessary, nonexistent services. The investigator's account did not need to be "updated," and Amazon does not charge money for account updates.[6]

## VII.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Trademark Infringement (15 U.S.C. § 1114)

108. Amazon incorporates by reference the factual allegations contained in Sections I– VI as though set forth herein.

109. Defendants' activities infringe the Amazon Trademarks.

110. Amazon advertises, markets, and distributes its products and services using the Amazon Trademarks, and uses these trademarks to distinguish its products and services from the products and services of others in the same or related fields.

111. Because of Amazon's long, continuous, and exclusive use of the Amazon Trademarks, they have come to mean, and are understood by customers, users, and the public to signify, products and services from Amazon.

112. Defendants' Websites and Social Media Pages use the Amazon Trademarks in commerce in a manner that is intended to cause confusion, mistake, or deception as to source, origin, or authenticity of Defendants' Websites and Social Media Pages.

---

[6] A few weeks later, an investigator working on behalf of DWT called (877) 550-9199, the number located on Websites 5 and 6. The technician asked for the investigator's phone number and email address (the investigator was using the same alias as he used in Test Purchase 3, so he provided the same name and phone number he used in Test Purchase 3). The technician then told the investigator that he checked this information and saw that the investigator had already previously talked to a technician named Ricky. The investigator talked to "Ricky" during Test Purchase 3.

COMPLAINT
Case No.

113.    Further, Defendants' activities are likely to lead the public to conclude, incorrectly, that Defendants' Websites, Social Media Pages, and product offerings originate with or are authorized by Amazon, thereby harming Amazon and innocent victims.

114.    At a minimum, Defendants acted with willful blindness to, or in reckless disregard of, their lack of authority to use the Amazon Trademarks and the confusion that the use of those trademarks had on consumers as to the source, sponsorship, affiliation, or approval by Amazon of Defendants' Websites, Social Media Pages, and products.

115.    Defendants are subject to liability, jointly and severally, for the wrongful conduct alleged herein, both directly and under various principles of secondary liability, including without limitation, respondeat superior, vicarious liability, and/or contributory infringement.

116.    As a result of Defendants' wrongful conduct, Amazon is entitled to recover its actual damages, Defendants' profits attributable to the infringement, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117(a)–(b).  The amount of money due from Defendants to Amazon is unknown to Amazon and cannot be ascertained without a detailed accounting by Defendants.  Alternatively, Amazon is entitled to statutory damages under 15 U.S.C. § 1117(c).

117.    Amazon is further entitled to injunctive relief, as set forth in the Prayer for Relief below.  Amazon has no adequate remedy at law for Defendants' wrongful conduct because, among other things: (a) the Amazon Trademarks are unique and valuable property; (b) in addition to the significant harm that Defendants have caused to innocent customers, Defendants' infringement constitutes harm to Amazon's reputation and goodwill such that Amazon could not be made whole by any monetary award; (c) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin, or authenticity of the infringing websites; and (d) Defendants' wrongful conduct, and the resulting harm to Amazon, is continuing.

### SECOND CAUSE OF ACTION

**False Designation of Origin, Sponsorship, Approval, or Association and False Advertising (15 U.S.C. § 1125(a))**

118.    Amazon incorporates by reference the factual allegations contained in Sections I–

COMPLAINT
Case No.

VI as though set forth herein.

119.    Amazon advertises, markets, and distributes its products and services using the Amazon Trademarks, and it uses these trademarks to distinguish its products and services from the products and services of others in the same or related fields.

120.    Because of Amazon's long, continuous, and exclusive use of the Amazon Trademarks, they have come to mean, and are understood by customers, end users, and the public to signify products and services from Amazon.

121.    Amazon has also designed distinctive and aesthetically pleasing displays, logos, icons, and graphic images (collectively, "Amazon designs") for its websites.

122.    Defendants' wrongful conduct includes the use of the Amazon Trademarks, Amazon's name, and/or imitation designs (specifically displays, logos, icons, and/or graphic designs virtually indistinguishable from the Amazon designs), and false statements regarding Amazon and its products or services in connection with Defendants' commercial advertising or promotion.

123.    Defendants have used, and continue to use, the Amazon Trademarks, Amazon's name, and/or imitation designs to deceive customers.  On information and belief, Defendants' wrongful conduct misleads and confuses their users and the public as to the origin and authenticity of the goods and services advertised, marketed, offered or distributed in connection with Amazon's trademarks, name, and imitation visual designs, and wrongfully trades upon Amazon's goodwill and business reputation.

124.    Defendants' acts constitute willful false statements in connection with goods and/or services distributed in interstate commerce, in violation of 15 U.S.C. § 1125(a).

125.    Defendants are subject to liability for the wrongful conduct alleged herein, both directly and under various principles of secondary liability, including without limitation, respondeat superior, vicarious liability, and/or contributory infringement.

126.    Amazon is further entitled to injunctive relief, as set forth in the Prayer for Relief below.  Defendants' acts have caused irreparable injury to Amazon.  The injury to Amazon is and continues to be ongoing and irreparable.  An award of monetary damages cannot fully

COMPLAINT
Case No.

compensate Amazon for its injuries, and Amazon lacks an adequate remedy at law.

127.    As a result of Defendants' wrongful conduct, Amazon is entitled to recover its actual damages, Defendants' profits, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117(a)–(b).  The amount of money due from Defendants to Amazon is unknown to Amazon and cannot be ascertained without a detailed accounting by Defendants.

## THIRD CAUSE OF ACTION

### Trademark Dilution (15 U.S.C. § 1125(c))

128.    Amazon incorporates by reference the factual allegations contained in Sections I–VI as though set forth herein.

129.    Amazon has exclusively and continuously promoted and used the Amazon Trademarks.  As one of the world's most well-known technology companies, the Amazon Trademarks have become famous, distinctive, and well-known symbols of Amazon—well before Defendants began using the Amazon Trademarks in association with their goods or services unaffiliated with Amazon.

130.    The actions of Defendants including, but not limited to, their unauthorized use of the described Amazon Trademarks in commerce to deceive users into believing Defendants' Websites, Social Media Pages, and services are affiliated with Amazon are likely to cause dilution of the Amazon Trademarks by blurring and tarnishment in violation of 15 U.S.C. § 1125(c).

131.    As a result of Defendants' willful conduct, Amazon is entitled to recover its actual damages, Defendants' profits, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117(a).

132.    Amazon is further entitled to injunctive relief, as set forth in the Prayer for Relief below.  In addition to the significant harm that Defendants have caused to innocent customers, Defendants' acts have caused irreparable injury to Amazon.  The injury to Amazon is and continues to be ongoing and irreparable.  An award of monetary damages cannot fully compensate Amazon for its injuries, and Amazon lacks an adequate remedy at law.

COMPLAINT
Case No.

**FOURTH CAUSE OF ACTION**

**Cybersquatting (15 U.S.C. § 1125(d))**

133.    Amazon incorporates by reference the factual allegations contained in Sections I–VI as though set forth herein.

134.    Amazon has exclusively and continuously promoted and used the Amazon Trademarks.  As one of the world's most well-known technology companies, the Amazon Trademarks have become famous, distinctive, and well-known symbols of Amazon—well before any of the Defendants registered the domains for Website 1 (www.downloadalexaappechosetup.com), Website 2 (www.downloadappalexaecho.com), or Website 4 (www.downloadalexaappecho.com).

135.    Defendants registered and used the domains for Websites 1, 2, and 4 with a bad faith intent to profit from the Amazon Trademarks based on a number of factors, including the fact that the domains have been used in furtherance of a scheme to defraud consumers by deceiving them into believing Defendants' domains are affiliated with Amazon.

136.    The domains for Websites 1, 2, and 4 are confusingly similar to or dilutive of the Amazon Trademarks.

137.    Amazon is entitled to actual damages under 15 U.S.C. § 1117(a), or in the alternative, statutory damages under 15 U.S.C. § 1125(d)(1).

138.    Amazon is entitled to have ownership of the domain for Website 4 (www.downloadalexaappecho.com) transferred to it, or in the alternative to have this domain forfeited or cancelled.

139.    Amazon is further entitled to injunctive relief, as set forth in the Prayer for Relief below.  In addition to the significant harm that Defendants have caused to innocent customers, Defendants' acts have caused irreparable injury to Amazon.  The injury to Amazon is and continues to be ongoing and irreparable.  An award of monetary damages cannot fully compensate Amazon for its injuries, and Amazon lacks an adequate remedy at law.

## VIII.    PRAYER FOR RELIEF

WHEREFORE, Amazon respectfully prays for the following relief:

40

COMPLAINT
Case No.

A.      That the Court enter judgment in favor of Amazon on all claims;

B.      That the Court issue an order permanently enjoining Defendants, their officers, agents, representatives, employees, successors and assigns, and all others in active concert or participation with them, from:

        (i)      Using the Amazon Trademarks in connection with any technology support services, or sale of goods or services;

        (ii)     Registering domains that include, are confusingly similar to, or dilutive of, the Amazon Trademarks;

        (iii)    Using any other indication of Amazon's brand in connection with any sale of goods or technology support services;

        (iv)     Making any statement of an affiliation or connection to Amazon in connection with any sale of goods or technology services; or

        (v)      Assisting, aiding, or abetting any other person or business entity in engaging or performing any of the activities referred to in the subparagraphs above;

C.      That the Court issue an order requiring Defendants to transfer ownership of the domain www.downloadalexaappecho.com to Amazon, or, in the alternative, to forfeit or cancel this domain;

D.      That the Court enter an order requiring Defendants to provide Amazon a full and complete accounting of all gross and net proceeds earned from innocent victims, including an identification of those victims;

E.      That Defendants' profits earned from innocent customers, as alleged in this Complaint, be disgorged pursuant to 15 U.S.C. § 1117(a);

F.      That Defendants be required to pay all actual damages which Amazon has sustained, or will sustain, as a consequence of Defendants' unlawful acts, and that such damages be trebled as provided for by 15 U.S.C. § 1117(a)–(b), or otherwise allowed by law;

COMPLAINT
Case No.

1    G.    That, instead of actual damages, Defendants be required to pay the maximum

2 amount of statutory damages for their infringement of the Amazon Trademarks pursuant to

3 15 U.S.C. § 1117(c);

4    H.    As this is an exceptional case, that Defendants be required to pay the costs of this

5 action and the reasonable attorneys' fees incurred in prosecuting this action, as provided for by

6 15 U.S.C. § 1117, or otherwise by law; and

7    I.    That the Court grant Amazon such other, further, and additional relief as the

8 Court deems just and equitable.

9    DATED this 22nd day of October, 2020.

10
                              DAVIS WRIGHT TREMAINE LLP
11                            Attorneys for Amazon.com, Inc.

12
                              By  *s/ Bonnie E. MacNaughton*
13                            Bonnie E. MacNaughton, (CA State Bar No. 107402)
                              Grant Damon-Feng (CA State Bar No. 319451)
14                            DAVIS WRIGHT TREMAINE LLP
                              920 Fifth Avenue, Suite 3300
15                            Seattle, WA 98104
                              Telephone:  (206) 622-3150
16                            Facsimile: (206) 757-7700

17
                              John D. Freed (CA State Bar No. 261518)
18                            505 Montgomery Street, Suite 800
                              San Francisco, CA 94111-6533
19                            Telephone:  (415) 276-6500
                              Facsimile: (415) 276-6599
20

21

22

23

24

25

26

27

28

COMPLAINT
Case No.