UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMAZON.COM, INC., <br><br>　　　　Plaintiff, <br><br>　　v. <br><br>EXPERT TECH ROGERS PVT. LTD., et al., <br><br>　　　　Defendants. | Case No. 20-cv-07405-PJH   (JSC) <br><br>**REPORT AND RECOMMENDATION RE: MOTION FOR DEFAULT JUDGMENT** <br><br>Re: Dkt. No. 39 |

Amazon.com, Inc. alleges that nine Defendants perpetrated a fraudulent scheme infringing on its trademarks. (Dkt. No. 1.)[1] The Clerk entered default against two Defendants, Swatanter Gupta and Expert Tech Rogers Pvt. Ltd. ("ETR"), on February 11, 2021 after they failed to appear or otherwise defend against this matter. (Dkt. Nos. 29, 31.) Amazon now moves for default judgment against Mr. Gupta and ETR pursuant to Federal Rule of Civil Procedure 55(b)(2). (Dkt. No. 39.) District Judge Phyllis J. Hamilton referred the motion to the undersigned for a report and recommendation. (Dkt. No. 48.) After carefully considering the motion, which is unopposed, and supporting documents, the Court concludes that oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), VACATES the September 23, 2021 hearing, and RECOMMENDS that the District Judge GRANT the motion.

**BACKGROUND**

**I.    Complaint Allegations**

Amazon is a Washington-based corporation whose products include the Alexa virtual assistant and Echo and Echo Dot smart speakers, which are compatible with Alexa. (Dkt. No. 1 ¶¶

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

1, 6, 21–22.)  Mr. Gupta is a resident of India and a director of ETR, an Indian company incorporated in 2015.  (*Id.* ¶¶ 9, 15, 41.)  Defendants Bharat Aggarwal and Heena Aggarwal are residents of California and are affiliated with two California corporations, Defendants Sleja, Inc., and Alexa Web Services Inc.  (*Id.* ¶¶ 7–8, 11–12.)  Defendants Chetan Parkash, Neelam Rani, and Rajinder Singh are corporate officers of Sleja.  (*Id.* ¶¶ 10, 13–14.)  No Defendant has any legitimate connection with Amazon.  (*Id.* ¶ 1.)

To set up an Alexa-enabled device, a user must download Amazon's Alexa app and follow the setup instructions there.  (*Id.* ¶ 23.)  Amazon alleges that all Defendants participated in a fraudulent scheme to target purchasers of genuine Amazon products, including Alexa, Echo, and Echo Dot devices, and sell fake customer support and set-up services using Amazon's trademarks.  (*Id.* ¶¶ 2, 7–15.)  Defendants used at least eight websites, and three social media pages to attract users to the websites.  (*Id.* ¶¶ 3, 45, 66–69.)  The websites are: downloadappalexaecho.com, dotcausa.com, downloadalexaappecho.com, smartspeakerappsetup.com, downloadappsetup.com, downloadalexaappechosetup.com, downloadalexaappsetup.com, and downloadappsetupwifi.com.  (*Id.* ¶ 45.)  The websites claim to provide "Guides for Alexa App & Amazon Alexa Setup," "Get Amazon Alexa App for Alexa Setup," "Download Alexa App and Amazon Echo," "Download Alexa App," "Download Alexa App and Echo Dot Setup," and "Alexa App."  (*Id.* ¶¶ 49, 52, 54, 56, 58, 60, 62, 64.)  Each of the websites prompts users to click a link for download and then to enter their name, email address, and phone number.  (*Id.* ¶¶ 49, 52, 54, 56, 58, 60, 62, 64, 72.)  Then, the websites show an error message with instructions to call a phone number or wait to receive a phone call from Defendants.  (*Id.* ¶¶ 73–75.)  When a user calls the phone number, Defendants take remote control of the consumer's computer, try to convince them that technical problems are preventing the Amazon devices from working, and offer paid services to fix the fake problems.  (*Id.* ¶¶ 4, 33.)

Investigators working for Amazon's counsel called four of the phone numbers provided in the website error messages.  (*Id.* ¶¶ 78–79, 89–90, 99–100; Dkt. No. 43 ¶¶ 3–12; Dkt. No. 44 ¶¶ 5–13, 15–23.)  They spoke with purported technicians offering support with setting up Alexa devices.  (Dkt. No. 1 ¶¶ 79–80, 90, 100–101.)  After taking remote control of the investigators'

2

computers, (*id.* ¶¶ 81, 91–92, 102–03), the technicians told the investigators that technical hurdles prevented them from setting up Alexa and offered paid services to fix the problems, (*id.* ¶¶ 83–84, 93–94, 102). The investigators agreed and completed the following test purchases: $99.99 for "network security lifetime protection," $49.99 for a "one-year subscription" for an "Alexa software account," and $149.99 for a "lifetime update." (*Id.* ¶¶ 84–87, 93–94, 96–97, 102–04; Dkt. No. 43 ¶¶ 8–9; Dkt. No. 44 ¶¶ 11–13, 22–23.) Amazon represents that the purchased services were fake and no genuine services were provided after payment. (Dkt. No. 1 ¶¶ 88, 98, 106–07.) Amazon represents that it provides legitimate customer support free of charge to purchasers of Alexa devices, and that Defendants' scheme wrongfully trades on Amazon's goodwill and reputation. (*Id.* ¶¶ 4, 23–24, 123.)

Amazon's complaint alleges infringement of eight trademarks in violation of 15 U.S.C. § 1114, (*id.* ¶¶ 26, 108–117); false designation of origin, sponsorship, approval, or association and false advertising in violation of 15 U.S.C. § 1125(a), (*id.* ¶¶ 118–27); trademark dilution in violation of 15 U.S.C. § 1125(c), (*id.* ¶¶ 128–132); and cybersquatting in violation of 15 U.S.C. § 1125(d), (*id.* ¶¶ 133–139). In the motion for default judgment, Amazon seeks $4,150,000 in damages: $1,000,000 in statutory damages for each of four trademarks (the AMAZON mark, the Amazon smiling arrow logo mark, the ALEXA mark, and the ECHO mark) and $50,000 for each of three cybersquatting violations (for the domain names downloadalexaappechosetup.com, downloadappalexaecho.com, and downloadalexaappecho.com). (Dkt. No. 39 at 9, 11 n.2, 29 n.7; Dkt. No. 46 at 2–3 ¶¶ 1–7.) Amazon also seeks a permanent injunction against Mr. Gupta and ETR. (Dkt. No. 39 at 2; Dkt. No. 46 at 3 ¶¶ 1–6.) Amazon does not seek default judgment as to the other four trademarks nor the claim of trademark dilution. (Dkt. No. 39 at 9, 11 n.2, 29 n.7; *see* Dkt. No. 46 at 2.)

## II. Non-Defaulting Defendants

Amazon's complaint names nine Defendants. (Dkt. No. 1.) The Clerk entered default against Mr. Gupta and ETR after they failed to appear or defend this matter. (Dkt. Nos. 29, 31.) Amazon reached a settlement with four Defendants: Bharat Aggarwal, Heena Aggarwal, Sleja, Inc., and Alexa Web Services Inc. (Dkt. No. 38; Dkt. No. 39 at 13; *see* Dkt. No. 51.) Amazon

3

1  intends to dismiss the remaining three Defendants after resolution of its motion for default
2  judgment against Mr. Gupta and ETR. (Dkt. No. 39 at 13 n.4.) Those three Defendants are
3  Chetan Parkash, Neelam Rani, and Rajinder Singh—Mr. Aggarwal's father, mother, and friend,
4  respectively, each of whom is a corporate officer of Sleja. (Dkt. No. 41 ¶¶ 5–6, 8–9.)

### III. Supporting Evidence in Declarations

In support of its motion for default judgment, Amazon submits declarations from now-dismissed Defendants Mr. and Ms. Aggarwal. (Dkt. Nos. 41, 42.) Because these declarations bear on the merits of Amazon's claims and the sufficiency of its complaint for purposes of default judgment, the Court summarizes the declarations alongside the complaint. *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

The declarations indicate that Mr. Gupta and ETR were the driving force behind the scheme. Mr. Gupta reached out to Mr. and Ms. Aggarwal after learning, from Mr. Aggarwal's parents Mr. Parkash and Ms. Rani, that the Aggarwals lived in the U.S. (Dkt. No. 41 ¶ 11; Dkt. No. 42 ¶ 5.) Mr. Gupta told the Aggarwals about his business, ETR, and recruited them to expand the business in the U.S. (Dkt. No. 41 ¶¶ 11–12; Dkt. No. 42 ¶¶ 5–6.) The Aggarwals agreed to use Sleja, their preexisting business entity, for the venture and to pay taxes, open bank accounts, and wire money from the U.S. to India. (Dkt. No. 41 ¶ 12–16; Dkt. No. 42 ¶¶ 7–8.) They later created another entity, Alexa Web Services Inc., and allowed Mr. Gupta to use that as well. (Dkt. No. 41 ¶¶ 24–25; Dkt. No. 42 ¶¶ 14–15.) The Aggarwals wired about 85% of the funds to Mr. Gupta. (Dkt. No. 41 ¶ 22; Dkt. No. 42 ¶ 7.) They kept 15% to pay customer refunds, bank fees, taxes, and administrative expenses, and earned as profit what was leftover, usually about 5%. (Dkt. No. 41 ¶ 22; Dkt. No. 42 ¶ 7.) Between 2017 and 2020, the Aggarwals wired about $712,546 to Mr. Gupta and ETR. (Dkt. No. 41 ¶¶ 28–34; *see also id.* ¶¶ 23, 26.)[2] The Aggarwals were not involved in the day-to-day operations run by Mr. Gupta and believed the venture was legitimate until they were served with process in this case. (*Id.* ¶¶ 18–21, 35–36; Dkt. No. 42 ¶¶ 8–12, 16–17.)

---

[2] $103,410 + $214,339 + $180,650 + $119,595 + $30,485 + $37,538 + $26,529 = $712,546.

4

**DISCUSSION**

**I.  Jurisdiction and Service of Process**

    **A.  Subject Matter Jurisdiction and Personal Jurisdiction**

Courts have a duty to examine both subject matter and personal jurisdiction when default judgment is sought against a non-appearing party. *In re Tuli,* 172 F.3d 707, 712 (9th Cir. 1999). Here, the Court may exercise subject matter jurisdiction because of the federal questions presented in the complaint, (Dkt. No. 1 ¶¶ 108–39). 15 U.S.C. §§ 1114, 1125(a), 1125(c), 1125(d); *see id.* § 1121(a); 28 U.S.C. §§ 1331, 1338(a).

The Court may find nationwide personal jurisdiction over Mr. Gupta and ETR if "three requirements are met. First, the claim against the defendant must arise under federal law . . . . Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction. Third, the federal court's exercise of personal jurisdiction must comport with due process." *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007) (citations omitted); *see* Fed. R. Civ. P. 4(k)(2).

Here, the first requirement is met because all of Amazon's claims arise under federal law. As to the second requirement, "the test for general jurisdiction asks whether a corporation is essentially 'at home' in the forum state." *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1021 (9th Cir. 2017) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). The complaint allegations, which the Court accepts as true, indicate that Mr. Gupta and ETR are not "at home" in any state. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) ("With respect to the determination of liability and the default judgment itself, the general rule is that well-pled allegations in the complaint regarding liability are deemed true."). Their business is located in India, and, while they worked with California residents Mr. and Ms. Aggarwal on the alleged scheme, there is no indication that the scheme specifically targeted residents of California or any other particular state. *See Williams*, 851 F.3d at 1020–22 (holding that company incorporated and with its principal place of business in Japan, with no offices or employees in California, and with the entire U.S. market accounting for 17% of global sales is not "at home" in California for purposes of general jurisdiction). Therefore, Defendants are not subject to the personal

jurisdiction of any state court of general jurisdiction.

The third requirement, due process, has several elements. Defendants must have "purposefully availed" themselves of the privileges of conducting activities in the forum or "purposefully directed" their activities toward the forum; Amazon's claims must arise out of or result from Defendants' forum-related activities; and the exercise of jurisdiction must be reasonable. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154–60 (9th Cir. 2006), *overruled in part on other grounds by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006) (en banc). For purposes of nationwide personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2), the "federal long-arm statute," the relevant forum is the entire U.S. *Id.* at 1154–55, 1158–60. Here, Mr. Gupta and ETR purposefully directed and expressly aimed their activities toward the U.S. by contacting Mr. and Ms. Aggarwal in California and using U.S. bank accounts and other infrastructure to make money from the scheme. (Dkt. No. 41 ¶¶ 11–16; Dkt. No. 42 ¶¶ 5–8); *see Pebble Beach*, 453 F.3d at 1155, 1156–60 (citing cases of "individualized targeting" where defendants' "correspondence . . . was a clear attempt to force the plaintiff to act"); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (explaining that suits "sounding in tort" often use purposeful direction rather than purposeful availment). Amazon's claims arise directly from those minimum contacts with the U.S. And finally, the quality of Defendants' minimum contacts and their close nexus to Amazon's claims demonstrate that exercising jurisdiction is reasonable. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 480 (1985) (explaining that personal jurisdiction is reasonable where "the quality and nature of [defendant's] relationship to the company in [the forum state] can in no sense be viewed as random, fortuitous, or attenuated" (internal quotation marks and citations omitted)). Accordingly, the Court may exercise personal jurisdiction, consistent with due process, over Mr. Gupta and ETR under Rule 4(k)(2).

### B. Service of Process

The Court must assess whether the defendant against whom default judgment is sought was properly served with notice of the action. *See Penpower Tech. Ltd. v. S.P.C. Tech.*, 627 F. Supp. 2d 1083, 1088 (N.D. Cal. 2008).

6

Service on foreign defendants is governed by Rule 4(f).  The District Judge approved alternative service on Mr. Gupta and ETR, who are based in India, (Dkt. No. 21).  *See* Fed. R. Civ. P. 4(f)(3) (authorizing service "at a place not within any judicial district of the United States . . . by other means not prohibited by international agreement, as the court orders").  Specifically, the District Judge approved service via electronic mail, "conditioned on [Amazon's] ability to obtain a receipt for confirmation of delivery to the email address of record." (Dkt. No. 21 at 2.)  Amazon filed proof of service via electronic mail to Mr. Gupta and ETR (at the same email address) with a receipt for confirmation of delivery, although not confirmation that the email was opened.  (Dkt. No. 27.)  Thus, service was adequate.

## II. Default Judgment

After entry of default, the Court may grant default judgment on the merits of the case. Fed. R. Civ. P. 55.  "The district court's decision whether to enter a default judgment is a discretionary one," *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980), guided by the following factors:

> (1) the possibility of prejudice to the plaintiff[;] (2) the merits of plaintiff's substantive claim[;] (3) the sufficiency of the complaint[;] (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect[;] and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).  Here, the *Eitel* factors weigh in favor of granting default judgment.

### A. Possibility of Prejudice to Amazon

The first factor considers whether the plaintiff will suffer prejudice, such as being left without a legal remedy, if the Court declines to enter default judgment.  Here, because Mr. Gupta and ETR did not respond to Amazon's complaint, Amazon's only recourse for its claims of trademark infringement is default judgment.  *See, e.g.*, *Fudy Printing Co., Ltd. v. Aliphcom, Inc.*, No. 17-cv-03863-JSC, 2019 WL 2180221, at *3 (N.D. Cal. Mar. 7, 2019); *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1054–55 (N.D. Cal. 2010).  Therefore, this factor weighs in favor of default judgment.

7

B.      **Merits of Amazon's Substantive Claims & Sufficiency of the Complaint**

The second and third factors, "often analyzed together," require the plaintiff "to plead facts sufficient to establish and succeed upon its claims." *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010); *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1055 (N.D. Cal. 2010).  After entry of default, the factual allegations in the complaint related to liability are accepted as true and deemed admitted.  *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).  "However, it follows from this that facts which are not established by the pleadings of the prevailing party, or claims which are not well-pleaded, are not binding and cannot support the judgment."  *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).  "The district court is not required to make detailed findings of fact."  *Fair Hous. of Marin*, 285 F.3d at 906.

Amazon seeks default judgment on three claims and submits declarations from counsel's investigators and the Aggarwals as supporting evidence.  *See, e.g.*, *Baskin-Robbins Franchising LLC v. Pena*, No. 19-cv-06657-JSC, 2020 WL 2616576, at *7 (N.D. Cal. May 7, 2020) (considering declarations in analyzing second and third *Eitel* factors).

1.      **Trademark Infringement**

The elements of a claim for trademark infringement are: (1) the plaintiff has a protectable ownership interest in a valid mark; and (2) the alleged infringer's use of the mark "is likely to cause confusion, or to cause mistake, or to deceive consumers."  *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1134 (9th Cir. 2006) (internal quotation marks and citation omitted); *see* 15 U.S.C. § 1114(a).

"Registration of a mark is prima facie evidence of the validity of the mark, the registrant's ownership of the mark, and the registrant's exclusive right to use the mark in connection with the goods specified in the registration.  When proof of registration is uncontested, the ownership interest element of a trademark infringement claim is met."  *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014) (citation omitted).  Amazon meets the first element by submitting evidence that the four trademarks are registered.[3]  (Dkt. No. 40; *see* Dkt. No. 1 ¶ 26.)

---

[3] While the declaration indicates that only registrations for AMAZON are attached, registrations

8

"Likelihood of confusion exists when consumers viewing the mark would probably assume that the goods it represents are associated with the source of a different product identified by a similar mark." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 608 (9th Cir. 2005). Likelihood of confusion "generally rel[ies] on an eight-factor test . . . : 1) the strength of the mark; 2) proximity or relatedness of the goods; 3) the similarity of the marks; 4) evidence of actual confusion; 5) the marketing channels used; 6) the degree of care customers are likely to exercise in purchasing the goods; 7) the defendant's intent in selecting the mark; and 8) the likelihood of expansion into other markets." *Id.* But "[t]he factors should not be rigidly weighed; . . . [they] are intended to guide the court in assessing the basic question of likelihood of confusion." *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1993). Here, accepting the complaint's factual allegations as true, a reasonably prudent consumer would likely be confused as to the origin of Defendants' services. Defendants' social media pages and websites used liberally the words "Amazon," "Alexa," and "Echo" and offered downloads and setup services that mimic Amazon's genuine download and setup process. (Dkt. No. 1 ¶¶ 3, 45, 49, 52, 54, 56, 58, 60, 62, 64, 66–69.) Two social media pages used the Amazon smiling arrow. (*Id.* ¶¶ 67–68.) Thus, Amazon meets the confusion element for the four trademarks: AMAZON, Amazon smiling arrow, ALEXA, and ECHO. (*See id.* ¶ 26.)

---

for all four marks are attached. (*See* Dkt. No. 40 ¶ 3.)

AMAZON: 2,657,226 (Int. Cl. 42), 2,738,837 (Int. Cl. 38), 2,738,838 (Int. Cl. 39), 2,832,943 (Int. Cl. 35), 2,857,590 (Int. Cl. 9), 3,868,195 (Int. Cl. 45), 4,171,964 (Int. Cl. 9), 4,533,716 (Int. Cl. 2), 4,656,529 (Int. Cl. 18), 4,907,371 (Int. Cls. 35, 41, 42), 5,102,687 (Int. Cl. 18), 5,281,455 (Int. Cl. 36). (Dkt. Nos. 40-1, 40-2, 40-3, 40-4, 40-5, 40-6, 40-7, 40-8 (canceled), 40-9, 40-10, 40-11, 40-12; *see* Dkt. No. 1 ¶ 26.)

Amazon smiling arrow: 4,171,965 (Int. Cl. 9), 5,038,752 (Int. Cl. 25). (Dkt. Nos. 40-13, 40-14; *see* Dkt. No. 1 ¶ 26.)

ALEXA: 5,563,417 (Int. Cls. 9, 35, 36, 39, 41, 42, 43, 44, 45), 5,880,382 (Int. Cls. 9, 37, 41, 42), 2,181,470 (Int. Cl. 42), 2,189,928 (Int. Cl. 9). (Dkt. Nos. 40-15, 40-16, 40-17, 40-18; *see* Dkt. No. 1 ¶ 26.)

ECHO: 5,470,187 (Int. Cls. 9, 42), 5,469,992 (Int. Cls. 9, 38, 41, 42). (Dkt. Nos. 40-19, 40-20; *see* Dkt. No. 1 ¶ 26.)

Accordingly, Amazon's claim of trademark infringement satisfies the second and third *Eitel* factors as sufficient on the merits.

### 2. False Designation of Origin & False Advertising

Amazon styles its second cause of action "false designation of origin, sponsorship, approval, or association and false advertising" in the complaint, and "false designation of origin and false advertising" in the motion for default judgment. (Dkt. No. 1 at 37; Dkt. No. 39 at 27.) However, false designation of origin and false advertising are distinct claims. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014); *see* 15 U.S.C. § 1125(a)(1)(A) (false designation of origin, also known as false association); *id.* § 1125(a)(1)(B) (false advertising); *see, e.g.*, *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1170–73 (N.D. Cal. 2015) (dismissing false advertising claim but not false designation of origin claim).

Amazon's motion focuses on the elements of false designation of origin: the defendant "(1) used in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services in question." *Luxul Tech.*, 78 F. Supp. 3d at 1170; *see Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902–04 (9th Cir. 2007). By contrast, the elements of false advertising are:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product;
>
> (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience;
>
> (3) the deception is material, in that it is likely to influence the purchasing decision;
>
> (4) the defendant caused its false statement to enter interstate commerce; and
>
> (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012) (citation omitted); *see Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734–35 (9th Cir. 1999).

10

Thus, the Court construes Amazon's motion as seeking default judgment on a claim of false designation of origin.

The elements of false designation of origin are similar to trademark infringement. *See Brookfield Commc'ns, Inc. v. W. Coast. Ent. Corp.*, 174 F.3d 1036, 1046 nn.6 & 8 (9th Cir. 1999); *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 917 (9th Cir. 1980). Therefore, courts have treated them as claims that rise and fall together. *Freecycle Network*, 505 F.3d at 902–04; *Vinh-Sanh Trading Corp. v. SFTC, Inc.*, No. 19-cv-04315-CRB, 2021 WL 3037706, at *8 (N.D. Cal. July 19, 2021); *Luxul Tech.*, 78 F. Supp. 3d at 1170; *Spy Optic, Inc. v. Alibaba.Com, Inc.*, 163 F. Supp. 3d 755, 766 n.3 (C.D. Cal. 2015). Because Amazon's claim of trademark infringement is adequate for purposes of the second and third *Eitel* factors, so too for its claim of false designation of origin.

### 3. Cybersquatting

The elements of cybersquatting are: "(1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted with bad faith intent to profit from that mark." *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218–19 (9th Cir. 2010) (internal quotation marks and citation omitted); *see* 15 U.S.C. § 1125(d).

Amazon claims cybersquatting as to three domain names only: downloadalexaappechosetup.com, downloadappalexaecho.com, and downloadalexaappecho.com. (Dkt. No. 1 ¶¶ 133–39.) Those domains were registered by users working for ETR or another company of Mr. Gupta's, Wise Move. (*Id.* ¶ 45; Dkt. No. 41 ¶ 22; Dkt. No. 43 ¶ 18.) Each of the three domains contains "Alexa" and/or "Echo," which are protected marks owned by Amazon. (Dkt. No. 40; *see* Dkt. No. 1 ¶ 26.) Finally, Defendants used the domains to profit from Amazon's marks and reaped more than $712,000 from visitors to the websites. *See DSPT Int'l*, 624 F.3d at 1221 ("The 'intent to profit' . . . means simply the intent to get money or other valuable consideration."). Therefore, the claim of cybersquatting satisfies the second and third *Eitel* factors as sufficient on the merits.

\* \* \*

On each of Amazon's three claims, the second and third *Eitel* factors weigh in favor of granting default judgment.

### C. Money at Stake

The fourth factor considers the amount of money at stake in relation to the seriousness of the defendant's conduct. *Eitel*, 782 F.2d at 1471–72. "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in light of defendant's actions." *Tech. LED Intellectual Prop., LLC v. Revogi, LLC*, No. 18-CV-03827-JSC, 2019 WL 2716610, at *4 (N.D. Cal. June 27, 2019) (citation omitted). "Conversely, default judgment may be appropriate where it is tailored to the defendant's specific misconduct." *Id.* (internal quotation marks and citation omitted). Unlike liability, the Court need not accept as true complaint allegations related to damages. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

Here, Amazon seeks $4,150,000 in damages: $1,000,000 for each of four trademark infringements and $50,000 for each of three cybersquatting violations. While the requested sum is large, it consists entirely of statutory damages. 15 U.S.C. § 1117(c)(2) (authorizing up to $2,000,000 per mark for willful use of counterfeit mark); *id.* § 1117(d) (authorizing up to $100,000 per domain name for cybersquatting). Thus, the amount of money at stake is tailored—by Congress—to the underlying misconduct, and further trimmed by half. Thus, the sum of money at stake is appropriate and weighs in favor of granting default judgment.

### D. Possibility of a Dispute Concerning Material Facts

There is no indication that the material facts are in dispute. The well-pleaded allegations in the complaint as to liability are deemed admitted. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). Additionally, Amazon's motion is considerably strengthened by the declarations of Mr. and Ms. Aggarwal, who have firsthand knowledge of the scheme and Mr. Gupta and ETR's central role. (Dkt. Nos. 41, 42.) In the absence of any likely factual disputes, this factor weighs in favor of default judgment.

### E. Excusable Neglect

"This factor favors default judgment where the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit." *Wecosign, Inc. v. IFG Holdings,*

12

*Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012). Defendants were properly served, by email, with the summons and complaint more than eight months ago. (Dkt. No. 27; *see* Dkt. No. 21.) Therefore, this factor weighs in favor of default judgment.

### F. Strong Policy Favoring Decisions on the Merits

"Our starting point is the general rule that default judgments are ordinarily disfavored. Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Thus, the seventh *Eitel* factor, by definition, weighs against entering default judgment. Here, "Defendant's failure to answer Plaintiffs' complaint makes a decision on the merits impractical, if not impossible," making default judgment appropriate notwithstanding the policy against it. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

\* \* \*

In sum, six of the seven *Eitel* factors weigh in favor of entering default judgment.

## III. Remedies

Amazon seeks both monetary relief (statutory damages) and injunctive relief under the Lanham Act.

### A. Damages

#### 1. Trademark Infringement

The Court may award statutory damages between $1,000 and $200,000 for each trademark infringement, or up to $2,000,000 for willful violations, "as the court considers just." 15 U.S.C. § 1117(c).

Amazon alleges willful infringement of four trademarks and seeks $1,000,000 in statutory damages for each. Because willfulness relates to the scope of liability, Amazon's plausible allegations showing Defendants' conduct was willful are deemed admitted. *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008). Thus, the requested damages are half the maximum that the Court may award for a willful violation. *See* 15 U.S.C. § 1117(c)(2). The request accords with the relief demanded in the pleadings, (Dkt. No. 1 at 42), such that Mr. Gupta and ETR are fairly on notice of their potential liability. Fed. R. Civ. P. 54(c); *see In re Ferrell*, 539 F.3d 1186, 1192–93 (9th Cir. 2008).

13

1    The Court has discretion to award statutory damages between the minimum and maximum,
2  so long as they are sufficient to deter future trademark infringement. *Playboy Enters., Inc. v.*
3  *Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1274–75 (9th Cir. 1982); *see Dream Games of Ariz.,*
4  *Inc. v. PC Onsite*, 561 F.3d 983, 992 (9th Cir. 2009) (explaining, in related context of copyright
5  infringement, that "statutory damages further compensatory and punitive purposes"). "In
6  determining the appropriate amount of statutory damages to award on default judgment, courts in
7  this district have considered whether the amount of damages requested bears a plausible
8  relationship to Plaintiff's actual damages." *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1102 (N.D.
9  Cal. 2014) (internal quotation marks and citations omitted). "While a plaintiff in a trademark or
10 copyright infringement suit is entitled to damages that will serve as a deterrent, it is not entitled to
11 a windfall." *Id.*  Where a plaintiff cannot reasonably estimate actual damages, and especially
12 where they show only a few sales related to the counterfeit mark, courts are disinclined to award
13 the maximum statutory damages at the risk of a windfall. *See id.* at 1103 (one sale); *Adobe Sys.,*
14 *Inc. v. Tilley*, No. C 09–1085 PJH, 2010 WL 309249, at *4 (N.D. Cal. Jan. 19, 2010) (one sale);
15 *Microsoft Corp. v. Ricketts*, No. C 06–06712 WHA, 2007 WL 1520965, at *4 (N.D. Cal. May 24,
16 2005) (three sales). Amazon primarily cites cases from other districts, in which the statutory
17 damages awarded were in reasonable proportion to the plaintiff's actual financial harm. *See Wimo*
18 *Labs, LLC v. eBay, Inc.*, No. 8:15-cv-1330-JLS-KESx, 2017 WL 10439835 (C.D. Cal. Aug. 3,
19 2017) (awarding $4 million for infringement of two marks where plaintiff's sales were "$10.5
20 million less than expected," *id.* at *1); *Rolex Watch U.S.A., Inc. v. Watch Empire LLC*, No. CV 13-
21 09221-SJO (FFMx), 2015 WL 9690322, at *8–9 (C.D. Cal. Sept. 29, 2015) (awarding $5 million
22 for infringement of five marks where defendant offered merchandise worth $7.2 million at
23 plaintiff's retail prices); *Nautilus, Inc. v. Chunchai Yu*, No. CV 10–00624 MMM (MANx), 2011
24 WL 13213575, at *2, 16 (C.D. Cal. Dec. 19, 2011) (awarding $8 million against three defendants
25 and $4 million against two defendants for infringement of four marks in sales worth $16 million).
26    Although it establishes only three sales, (Dkt. No. 1 ¶¶ 84–87, 93–94, 96–97, 102–04; Dkt.
27 No. 43 ¶¶ 8–9; Dkt. No. 44 ¶¶ 11–13, 22–23), Amazon strengthens its case with evidence of
28 Defendants' actual profits—more than $712,000, (Dkt. No. 41 ¶¶ 23, 26, 28–34). Nonetheless, an

14

award of $4,000,000 would be a windfall for Amazon. Not only is that request out of proportion to Defendants' profits of $712,000, it is also untethered to quantifiable financial harm to Amazon because Amazon provides Alexa support and setup services for free. (*See* Dkt. No. 1 ¶¶ 4, 23–24, 123.) Thus, the users who bought fake services from Defendants would not have generated Amazon sales instead; defrauded users, not Amazon, are the ones who have lost $712,000. Defendants' scheme did plausibly harm Amazon via lost goodwill, but, without further explanation, the Court is not convinced that lost goodwill approximates $4,000,000.

Accordingly, the Court recommends statutory damages in the amount of $200,000 per trademark infringement, for a total of $800,000. Such an award is sufficient to deter Mr. Gupta and ETR's willful conduct without creating a windfall for Amazon. *See, e.g.*, *Ploom, Inc. v. Iploom, LLC*, No. 13–cv–05813 SC, 2014 WL 1942218, at *6–7 (N.D. Cal. May 12, 2014) (awarding $100,000 per willful violation where highest estimate of defendant's revenue was about $2 million); *Adobe Sys., Inc. v. Taveira*, No. C 08–2436 PJH, 2009 WL 506861, at *5–6 (N.D. Cal. Feb. 27, 2009) (awarding $50,000 per willful violation where plaintiffs showed defendants made thousands of sales).

### 2. Cybersquatting

The Court may award statutory damages between $1,000 and $100,000 for each domain name subject to a bad faith cybersquatting violation, "as the court considers just." 15 U.S.C. § 1117(d).

Amazon alleges bad faith cybersquatting as to three domain names and seeks $50,000 in statutory damages for each. As with trademark infringement, Amazon's plausible allegations of bad faith are deemed admitted and the damages request accords with the pleadings, (Dkt. No. 1 ¶ 137). *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008); *In re Ferrell*, 539 F.3d 1186, 1192–93 (9th Cir. 2008); *see* Fed. R. Civ. P. 54(c). The requested damages are half the maximum that the Court may award for a willful violation. *See* 15 U.S.C. § 1117(d). To determine statutory damages in this context,

> courts generally consider a number of factors . . . including the egregiousness or willfulness of the defendant's cybersquatting, the defendant's use of false contact information to conceal its infringing

15

> activities, the defendant's status as a "serial" cybersquatter—i.e., one who has engaged in a pattern of registering and using a multitude of domain names that infringe the rights of other parties—and other behavior by the defendant evidencing an attitude of contempt towards the court or the proceedings.

*Digby Adler Grp. LLC v. Image Rent a Car, Inc.*, 79 F. Supp. 3d 1095, 1108 (N.D. Cal. 2015) (citation omitted); *see* 15 U.S.C. § 1125(d)(1)(B) (listing factors that a court may consider in determining bad faith intent). Only the first factor is supported here: the complaint allegations indicate that Mr. Gupta and ETR's conduct was willful. But they did not use false contact information on the domain name registrations, (*see* Dkt. No. 1 ¶ 45), and Amazon points to no evidence of serial cybersquatting on "other" parties. *Ploom, Inc. v. Iploom, LLC*, No. 13–cv–05813 SC, 2014 WL 1942218, at *7 (N.D. Cal. May 12, 2014). Defendants' default is the only conduct possibly evincing an attitude of contempt toward the proceedings, and, given the alternative service by email here, such conduct does not rise to the level of contempt.

Accordingly, the Court recommends statutory damages in the amount of $25,000 per cybersquatting violation, for a total of $75,000. *See Digby Adler, Inc.*, 79 F. Supp. 3d at 1108 n.4 (collecting cases awarding between $25,000 and $100,000 per cybersquatting violation); *Verizon Cal. Inc. v. Onlinenic, Inc.*, No. C 08–2832 JF (RS), 2009 WL 2706393, at *3–5 (N.D. Cal. Aug. 25, 2009) (awarding $50,000 per violation where each of four factors was strongly supported).

## B. Permanent Injunctive Relief

The Court may order permanent injunctive relief "to prevent the violation of any right of the registrant of a mark." 15 U.S.C. § 1116(a). "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by the threat of continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988). A plaintiff must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

16

As to irreparable injury, the Lanham Act provides:

> A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction or upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction . . . .

15 U.S.C. § 1116(a). Thus, the statute creates two tracks to a rebuttable presumption of irreparable harm, one for purposes of a permanent injunction and the other for purposes of a preliminary injunction. Amazon asserts a rebuttable presumption because of its likely success on the merits, but it seeks a permanent, not preliminary, injunction. (Dkt. No. 39 at 35.) Amazon does not address or provide authority as to whether default judgment constitutes "a finding of a violation," 15 U.S.C. § 1116(a), nor whether the statute's amended language abrogates the Ninth Circuit's prior holding that "actual irreparable harm must be demonstrated to obtain a permanent injunction in a trademark infringement action." *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013).

Notwithstanding that shortcoming, Amazon has shown irreparable harm if Defendants continue to infringe its trademarks. Amazon is a huge corporation with global brand recognition and goodwill, (*id.* ¶¶ 1, 23–24, 123), and Defendants' infringement fraudulently trades on that goodwill. *See, e.g.*, *MOM Enters., Inc. v. Roney Innovations, LLC*, No. 20-cv-04850-TSH, 2020 WL 8614101, at *9 (N.D. Cal. Nov. 24, 2020). Second, monetary damages are inadequate to prevent future infringement; Defendants' default means there is no indication the infringement will stop. *See Adobe Sys. Inc. v. Brooks*, No. 5:08–cv–04044 RMW, 2009 WL 593343, at *3 (N.D. Cal. Mar. 5, 2009). Third, the only apparent hardship to Defendants is ceasing the unlawful conduct, which is not a hardship for purposes of permanent injunction analysis. *Triad Sys. Corp. v. Southeastern Exp. Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995). Fourth, an injunction will serve the general public's interest in protecting trademark holders' rights, as well as the relevant public's interest in not falling prey to Defendants' scheme. *See Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 993–94 (9th Cir. 2009). Thus, the four requirements for a permanent injunction are met.

"[A]n injunction should be tailored to eliminate only the specific harm alleged . . . but should not be so narrow as to invite easy evasion." *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1116 (9th Cir. 2012) (internal quotation marks and citations omitted). Amazon requests the following injunction:

> Defendants Gupta and ETR, and their respective employees, agents, successors and assigns, and all others in active concert or participation with them, are permanently enjoined and restrained from:
>
> 1. Using counterfeit versions of any trademarks registered by Amazon (or its subsidiary, Amazon Technologies, Inc.) as of this injunction's entry date with any advertising, marketing, offer for sale, promotion, display, publication, website, voicemail, email, or software;
>
> 2. Using any false designation of origin or false or misleading description or false or misleading representation that can or is likely to lead the trade or public or individuals erroneously to believe that any website, social media page, voicemail, email, advertising, or other marketing materials has been produced, distributed, displayed, licensed, sponsored, approved or authorized by or for Amazon, when such is not true in fact;
>
> 3. Engaging in any other activity constituting an infringement or dilution of any trademarks registered by Amazon (or its subsidiary, Amazon Technologies, Inc.);
>
> 4. Engaging in any activity that defrauds individuals into paying money for Amazon services;
>
> 5. Registering or using any website domain names that involve trademarks registered by Amazon (or its subsidiary, Amazon Technologies, Inc.); and
>
> 6. Knowingly and materially assisting any other person or business entity in engaging in or performing any of the activities listed above.

(Dkt. No. 46 at 3.) The Court recommends that this proposed injunction is sufficiently tailored, except for the reference to trademark dilution, a claim alleged in Amazon's complaint but not provided as a basis for default judgment. (*See* Dkt. No. 39 at 9, 11 n.2, 29 n.7; Dkt. No. 46 at 2.)

## CONCLUSION

For the reasons explained above, the Court RECOMMENDS that the District Judge GRANT Amazon's motion for default judgment as to Defendants Mr. Gupta and ETR. The Court recommends a statutory damages award of $875,000, as follows:

1. $200,000 for willful infringement of the AMAZON mark;

18

2. $200,000 for willful infringement of the Amazon smiling arrow logo mark;

3. $200,000 for willful infringement of the ALEXA mark;

4. $200,000 for willful infringement of the ECHO mark;

5. $25,000 for cybersquatting in connection with the domain name www.downloadalexaappechosetup.com;

6. $25,000 for cybersquatting in connection with the domain name www.downloadappalexaecho.com; and

7. $25,000 for cybersquatting in connection with the domain name www.downloadalexaappecho.com.

15 U.S.C. §§ 1117(c)(2), (d). The Court further recommends an injunction permanently enjoining and restraining Defendants Gupta and ETR, and their respective employees, agents, successors and assigns, and all others in active concert or participation with them, from:

1. Using counterfeit versions of any trademarks registered by Amazon (or its subsidiary, Amazon Technologies, Inc.) as of this injunction's entry date with any advertising, marketing, offer for sale, promotion, display, publication, website, voicemail, email, or software;

2. Using any false designation of origin or false or misleading description or false or misleading representation that can or is likely to lead the trade or public or individuals erroneously to believe that any website, social media page, voicemail, email, advertising, or other marketing materials has been produced, distributed, displayed, licensed, sponsored, approved or authorized by or for Amazon, when such is not true in fact;

3. Engaging in any other activity constituting an infringement ~~or dilution~~ of any trademarks registered by Amazon (or its subsidiary, Amazon Technologies, Inc.);

4. Engaging in any activity that defrauds individuals into paying money for Amazon services;

5. Registering or using any website domain names that involve trademarks registered by Amazon (or its subsidiary, Amazon Technologies, Inc.); and

19

6. Knowingly and materially assisting any other person or business entity in engaging in or performing any of the activities listed above.

*Id.* § 1116(a).

**IT IS SO RECOMMENDED.**

Dated: September 22, 2021

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge